**VINMAR TRADE FINANCE, LTD., Appellant,**

v.

**UTILITY TRAILERS DE MEXICO, S.A. DE C.V. and Tractocamiones Kenworth De Monterrey, S.A. de C.V., Appellees.**

No. 01–09–00281–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 10, 2010.

---

Elizabeth G. Bloch, Stephen W. Lemmon, Kell Corrigan Mercer, Brown McCarroll, L.L.P., Austin, TX, for Appellant.

Wanda McKee Fowler, Wright Brown & Close, LLP, William A. Worthington, Strasburger & Price, L.L.P., Houston, TX, for Appellees.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

## OPINION

LAURA CARTER HIGLEY, Justice.

Vinmar Trade Finance, Ltd. ("Vinmar"), a Cayman Islands corporation headquartered in Houston, Texas, brought suit against Mexican corporations Utility Trailers de Mexico, S.A. de C.V. ("Utility") and Tractocamiones Kenworth de Monterrey, S.A. de C.V. ("Kenworth") for fraud, civil conspiracy, and breach of contract in Harris County district court. The trial court, inter alia, granted Utility's special appearance and Utility's and Kenworth's motion to dismiss based on forum non conveniens.

In five appellate issues, Vinmar challenges the trial court's judgment dismissing its claims against Utility and Kenworth. Of these issues, the dispositive issue that we address is whether the trial court abused its discretion when it granted the defendants' motion to dismiss based on common law forum non conveniens. Because we hold that the trial court did not abuse its discretion, we affirm the judgment of the trial court.

### Factual & Procedural Background

Vinmar is a corporation organized under the laws of the Cayman Islands with its headquarters in Houston, Texas. According to its website, Vinmar "has been successfully providing international trade, finance and logistics in emerging markets." Vinmar is part of The Vinmar Group, which has 26 offices and subsidiaries in 20 countries, including an agent in Monterrey, Mexico. It has over $1 billion in annual revenues.

Utility is a family owned business that sells new and used trailers. It is organized under Mexican law and headquartered in Mexico. Kenworth is a seller of tractor-trucks. It is also a Mexican corporation with its principal place of business in Monterrey, Mexico.

Tracomsa, S.A., a Mexican transportation and trucking company, sought to purchase tractor-trucks from Kenworth and trailers from Utility. Tracomsa needed financing to purchase the equipment. A third-party intermediary, San Antonio Trade Group, introduced Tracomsa to Vinmar, which agreed to finance the equipment.

To facilitate the financing, representatives of Kenworth and Utility communicated, in Spanish, via email, telephone, and telefax with Vinmar's representative, Enrique Tamashiro. Some of the communications were initiated by Tamashiro, who was located in Houston, and some were initiated by representatives of Kenworth and Utility, who were located in Mexico. The communications served to provide information regarding Kenworth and Utility and to identify the equipment being purchased by Tracomsa. The communications indicated that Tracomsa intended to purchase 30 tractor-trucks from Kenworth and 28 trailers from Utility. Kenworth and Utility provided to Vinmar the serial and identification numbers of equipment to be purchased by Tracomsa.

Tracomsa and Vinmar signed an "Equipment Operating Credit Agreement" in which Vinmar agreed to finance the purchase of the trailers and the tractor-trucks. Attached to the agreement was a list of the 28 Utility trailers and 30 Kenworth tractor-trucks, including serial numbers, to be financed by Vinmar. Utility and Kenworth were not parties to that agreement.

In addition to the communications, Tamashiro also traveled to Monterrey, Mexico to meet with representatives of Utility and Kenworth and to conduct due diligence with respect to the equipment. Tamashiro was accompanied by Jessica Linares, a representative of San Antonio Trade Group. While in Monterrey, representatives of Kenworth and Utility each signed a "Seller's Certificate," the contents of which would later be in dispute. Following the visit, Tracomsa gave Vinmar a promissory note in the principal amount of $4,978,549.80.

Kenworth and Utility also gave instructions to Vinmar regarding the wiring of funds. Vinmar wired $1,765,033.20 to Utility's bank account in Concord, California to pay for the 28 Utility trailers. Vinmar also wired $3,213,516.30 to Kenworth's bank account in Laredo, Texas to pay for the 30 Kenworth tractor-trucks.

Tracomsa then advised Kenworth that it was reducing its order from 30 truck-tractors to 14 truck-tractors and modifying certain unit specifications. Following the order reduction, Tracomsa further requested reimbursement of the excess funds held by Kenworth that had been received from Vinmar. In response, Kenworth authorized its bank in Laredo, Texas to refund $1,876,516.60 to Tracomsa's bank, which was also in Laredo, Texas, with such sum reflecting the change in the order. Kenworth later delivered 14 truck-tractors to Tracomsa.

Tracomsa also notified Utility that it was changing its order with regard to the 28 trailers. Pursuant to the order change, Utility later delivered 386 tires and 15 trailers to Tracomsa. Utility refunded $608,536.00 to Tracomsa as a result of the order change. The funds were transferred from Utility's bank in California to Tracomsa's bank account in Laredo, Texas.

Tracomsa defaulted on its repayment obligation to Vinmar under the Promissory Note. With regard to the default, Vinmar sued Tracomsa in Monterrey, Mexico and then in Harris County, Texas.

In a separate action, Vinmar sued Utility and Kenworth in Harris County district court, the action from which the instant appeal arises. Vinmar alleges that Utility and Kenworth breached the respective Seller's Certificate signed by each seller. Specifically, Vinmar alleges that each Seller's Certificate prohibited the seller from transferring any of the funds to Tracomsa. Vinmar asserts that Utility and Kenworth breached the Seller's Certificates when each transferred funds to Tracomsa after Tracomsa changed the orders by reducing the amount of equipment it was purchasing.

Vinmar also sued Utility and Kenworth for fraud. Vinmar alleges that Utility and Kenworth made intentional misrepresentations and failed to disclose material facts regarding the sale of the equipment and the financing. Vinmar also asserts a claim for conspiracy. Vinmar alleges that Utility, Kenworth, and Tracomsa conspired to defraud it of the principal sum of $4,978,549.00. Vinmar later added San Antonio and its principal, Andrew Parker, as defendants.

Utility filed a special appearance asserting that it was not amenable to process issued by a Texas court because the trial court did not have personal jurisdiction over it. Utility asserted that it lacked the requisite minimum contacts with Texas to satisfy the requirements of due process. Kenworth and Utility, subject to its special appearance, also filed a motion to quash service contending that Vinmar had not been properly served them with process as required by international treaty.

In addition, Kenworth and Utility filed a motion to dismiss based on the common law doctrine of forum non conveniens. The defendants asserted that Mexico is the proper forum for Vinmar's suit against them.

To save time and expense, Kenworth and Utility each stipulated to certain facts for the limited purpose of supporting Utility's special appearance, the motions to dismiss based on forum non conveniens, and the motions to quash service. These written stipulations were filed in the trial court and appended to the motions. In addition, each defendant supported its motion to dismiss based on forum non conveniens with declarations signed by the defendant's corporate representatives and with declarations signed by a Mexican attorney.

To support dismissal based on forum non conveniens, the defendants asserted that Mexico provides an adequate forum for Vinmar's claims. Kenworth and Utility pointed out that the suit arose from the

sale of equipment in Mexico between Mexican companies. They also pointed out that Vinmar is a Caymen Island company that although headquartered in Houston, has offices and subsidiaries in more 26 counties, including Mexico. Kenworth and Utility asserted that the vast majority of the events at issue occurred in Mexico. They further asserted that the alleged misrepresentations were made in Mexico, the Seller's Certificates were executed in Mexico, and the alleged conspiracy took place in Mexico. The defendants averred that the vast majority of the witnesses and documents relevant to this litigation are located in Mexico and are written in Spanish. Lastly, the defendants asserted that all of Vinmar's claims are governed by Mexican law.

Vinmar responded to the defendants' motions to dismiss based on forum non conveniens by asserting that private and public interest factors weighed in favor of keeping the suit in Texas. Because it is headquartered in Houston, Vinmar averred, "The State of Texas has a vested interest in the fair resolution of claims by its business owners." Vinmar also pointed to Kenworth's and Utility's acceptance of the transfer of funds from Vinmar's Texas bank account. Vinmar also relied on Kenworth's transfer of funds from its Laredo bank account to Tracomsa's Laredo bank account and to Utility's transfer of funds from its California bank account to Tracomsa's Texas account. Vinmar asserted that "a majority of witnesses and documents with respect to these transfers are located in Texas." Vinmar claimed that co-defendant, Andrew Parker, and non-party witness, Jessica Linares, are located in Texas.

In support of its response, Vinmar relied on the Kenworth's and Utility's stipulations. It also offered the affidavit of Jessica Linares, the San Antonio Trade Group employee who traveled to Monterrey, Mexico with Enrique Tamashiro, Vinmar's representative. In her affidavit, Linares testified that, when she was in Monterrey, she heard Kenworth's representative discuss with Noe Chavez, the principal of Tracomsa, their plan to misrepresent the equipment purchase to Vinmar. Specifically, Linares testified,

I was present at a meeting in Monterrey, Mexico between Noe Chavez and Marcos Gil, of Kenworth de Monterrey. In that meeting, Marcos Gil and Noe Chavez discussed their intent to misrepresent the transaction to Vinmar. Marcos Gil and Noe Chavez discussed that, while the Vinmar loan transaction documents represented that Tracomsa was acquiring 30 trucks, Noe Chavez and Tracomsa, S.A. intended to "return" most of the trucks to Kenworth de Monterrey. Kenworth de Monterrey, in turn, would then send a refund to Tracomsa, S.A., which Noe Chavez would use for purposes other than what was being represented to Vinmar.

Linares also stated that she had heard conversations between her boss, Andrew Parker, and Chavez similar in substance to the conversation she had heard between Chavez and Utility's representative. In the conversations, Chavez had stated that he planned to purchase less equipment from Kenworth and Utility than had been represented to Vinmar. He then planned to keep the excess funds for other purposes. Linares testified that Chavez also told Parker that he had contacts at Utility and Kenworth that would help him misrepresent the transactions to Vinmar.

Ultimately, the trial court granted the defendants' motion to quash service, Utility's special appearance, and Utility's and Kenworth's motions to dismiss based on the common law doctrine of forum non conveniens. The trial court also granted

Kenworth's and Utility's motion to sever Vinmar's claims against Andrew Parker and San Antonio Trade Group from Vinmar's claims against Kenworth and Utility.

Vinmar filed a motion for new trial and motion for reconsideration. With regard to the forum non conveniens issue, Vinmar claimed, for the first time, that although it was an available forum for it to file its claims, Mexico is not adequate alternative forum because of the high level of corruption of the Mexican judiciary. In support of this assertion, Vinmar cited numerous internet websites that it averred contain articles discussing the corrupt state of the Mexican judicial system.

In its motion for new trial, Vinmar reiterated its arguments that the balance of the private and public interest factors involved in a forum non conveniens analysis weighed in its favor. The trial court denied Vinmar's motion for new trial and for motion for reconsideration. This appeal followed. In five issues, Vinmar contends that the trial court erred in granting Utility's special appearance, in dismissing its claims against Utility and Kenworth based on the common law doctrine of forum non conveniens, in granting the defendants' motion to quash service, and in severing Vinmar's claims against Utility and Kenworth from its claims against San Antonio Trade Group and its principal, Andrew Parker.

### Forum Non Conveniens

■■■ We begin by addressing the dispositive issue of whether the trial court abused its discretion when it dismissed Vinmar's claims against Utility and Kenworth based on the common law doctrine of forum non conveniens. We recognize that two of Vinmar's issues challenge the trial court's order granting Utility's special appearance. Generally, courts are required to determine questions of jurisdiction before reaching the merits of a case. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). We further recognize that the doctrine of forum non conveniens applies only if the trial court has jurisdiction over the parties. *See Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n. 2 (Tex.1994) ("Before a court may invoke forum non conveniens, the court must find that it has jurisdiction over the defendant."). Nonetheless, the United States Supreme Court has held that certain non-merits, non-jurisdictional issues, such as forum non conveniens, may be decided before jurisdictional issues under the proper circumstances. For example, in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432, 127 S.Ct. 1184, 1192, 167 L.Ed.2d 15 (2007), the United States Supreme Court held that the question of forum non conveniens can be addressed before considering whether subject matter jurisdiction exists. *Id.* at 1188 (explaining that "a district court has discretion to respond at once to a defendant's forum non conveniens plea, and need not take up first any other threshold objection[,]" including subject matter jurisdiction or personal jurisdiction). "A district court therefore may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 1192 (stating that forum non conveniens dismissal "denies audience to a case on the merits" and "is a determination that the merits should be adjudicated elsewhere" (internal quotation marks and brackets omitted)). Thus, *Sinochem* stands for the proposition that certain non-merits, non-jurisdictional issues may be addressed preliminarily, because "[j]urisdiction is vital only if the court proposes to issue a judgment on the merits." *Id.* at 1191–92; *see Forsythe v. Saudi Arabian*

*Airlines Corp.,* 885 F.2d 285, 290 (5th Cir. 1989) (concluding that disposal of case on forum non conveniens grounds obviated need to consider subject matter jurisdiction); *see also Leroy v. Great W. United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2715, 61 L.Ed.2d 464 (1979) (upholding decision to address venue before jurisdiction). In this case, judicial economy is best served by addressing the forum non conveniens issue first because it pertains to the dismissal of Vinmar's claims against Utility and Kenworth. In contrast, the trial court's grant of the special appearance disposed of Vinmar's claims against Utility only.

## A. Legal Standards

### 1. Principles of Forum Non Conveniens

 Forum non conveniens is an equitable doctrine exercised by courts to prevent the imposition of an inconvenient jurisdiction on a litigant. *Exxon Corp. v. Choo,* 881 S.W.2d 301, 302 (Tex.1994). A trial court will exercise the doctrine of forum non conveniens when it determines that, for the convenience of the litigants and witnesses and in the interest of justice, the action should be instituted in another forum. *See id.* In short, the "central focus of the forum non conveniens inquiry is convenience." *Quixtar Inc. v. Signature Management Team, LLC,* 315 S.W.3d 28, 33 (Tex.2010) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981)).

 Building on its holding in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court set out the framework for analyzing forum non conveniens in an international context in *Piper Aircraft.* First, "the court must determine whether there exists an alternative forum." *Piper Aircraft,* 454 U.S. at 255, n. 22, 102 S.Ct. at 265. The court

considers the amenability of the defendant to service of process and availability of an adequate remedy in the alternative forum. *See id.,* 454 U.S. at 255 n. 22, 102 S.Ct. at 265; *In re General Elec. Co.,* 271 S.W.3d 681, 688 (Tex.2008) (orig. proceeding). Second, the court must determine which forum is best suited to the litigation. *See Piper Aircraft,* 454 U.S. at 255, 102 S.Ct. at 265. In performing this second step, a court must consider whether certain private and public interest factors weigh in favor of dismissal. *See Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. A court must be mindful that "the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice." *Koster v. Am. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947).

 The defendants bear the burden of proof on all elements of the forum non conveniens analysis and must establish that the balance of factors strongly favors dismissal. *See RSR Corp. v. Siegmund,* 309 S.W.3d 686, 710–11 (Tex.App.-Dallas 2010, no pet.); *see also DTEX, LLC v. BBVA Bancomer, S.A.,* 508 F.3d 785, 794 (5th Cir.2007). Ordinarily, a defendant seeking forum non conveniens dismissal "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007); *see Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

Nonetheless, a plaintiff's choice of forum is not dispositive. *Piper Aircraft,* 454 U.S. at 255–56 n. 23, 102 S.Ct. 252; *see DTEX,* 508 F.3d at 795. The *Piper Aircraft* court explained,

Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

*Piper Aircraft,* 454 U.S. at 255–56 n. 23, 102 S.Ct. 252

As recognized by the Fifth Circuit in *DTEX,*

Judicial concern for allowing citizens of the United States access to American courts has been tempered by the expansion and realities of international commerce. When an American corporation doing extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's preference of a United States forum.

*DTEX,* 508 F.3d at 795. The court recognized,

In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere.

*Id.* (quoting *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.,* 556 F.2d 975, 977 (9th Cir.1977)); *see also Base Metal Trading SA v. Russian Aluminum,* 253 F.Supp.2d 681, 696 (S.D.N.Y.2003) (explaining that "[w]here an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against

forum non conveniens dismissal is diminished").

### 2. Standard of Review

▮ A "forum non conveniens determination is committed to the sound discretion of the trial court." *Quixtar,* 315 S.W.3d at 31 (quoting *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. at 266). "It may be reversed only when there has been a clear abuse of discretion; where the court has considered all the relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.* (quoting *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. at 266).

▮ A trial court commits an abuse of discretion when it acts "without reference to any guiding rules and principles." *Id.* (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985)). The "mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion occurred." *Id.* (quoting *Downer,* 701 S.W.2d at 242).

In *Quixtar,* the Supreme Court of Texas made clear that a court of appeals should not conduct a de novo review of the evidence by mechanically reweighing each forum non conveniens factor. *See id.* at 35; *see also O'Keefe v. Noble Drilling Corp.,* 347 Fed.Appx. 27, 30–31 (5th Cir.2009) ("In reviewing forum non conveniens decisions, our duty is to review the lower court's decision making process and conclusion and determine if it is reasonable; our duty is not to perform a de novo analysis and make the initial determination for the district court."). The court emphasized that "forum non conveniens dismissals are within the sound discretion of the

trial court." *See Quixtar,* 315 S.W.3d at 35.

With the above principles in mind, we now determine whether the trial court abused its discretion when it dismissed Vinmar's claims against Utility and Kenworth based on the common law doctrine of forum non conveniens. More precisely, we review the record to determine whether the trial court acted within its discretion when it implicitly determined (1) an adequate, alternative forum exists for Vinmar's claims in Mexico and (2) the balance of the *Gulf Oil* public and private interest factors weigh in favor of dismissal.

### B. Analysis

#### 1. Adequacy of Mexico as an Alternative Forum

▇▇▇ For a case to be dismissed for forum non conveniens, there must be another forum that could hear the case. *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265. An alternative forum exists when it is both available and adequate. *Saqui v. Pride Cent. America, LLC,* 595 F.3d 206, 211 (5th Cir.2010). A "foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum." *Sarieddine v. Moussa,* 820 S.W.2d 837, 841 (Tex.App.-Dallas 1991, writ denied) (quoting *Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 727 (5th Cir.1990)). Vinmar does not dispute that Mexico is available forum, rather, Vinmar questions whether Mexico is an "adequate" forum.[1]

▇▇▇ "An alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though

they may not enjoy the same benefits as they might receive in an American court." *In re Pirelli Tire, L.L.C,* 247 S.W.3d 670, 678 (Tex.2007) (orig. proceeding) (quoting *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 671 (5th Cir.2003)). " 'The substantive law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there.' " *DTEX,* 508 F.3d at 796 (quoting *Tjontveit v. Den Norske Bank ASA,* 997 F.Supp. 799, 805 (S.D.Tex.1998)).

▇▇▇ In the trial court, appellees offered the declaration of Jose Arturo Gonzalez Elizondo, a Mexican attorney, as evidence of the adequacy of the Mexican forum. The declaration provided the following information to the trial court: (1) Mexican law would allow Vinmar to bring claims for money damages based on the facts alleged; (2) Mexican law provides a means for a successful party to enforce a money judgment; (3) Mexico's legal system provides procedures which would allow Vinmar to join all parties to the litigation, including San Antonio Trade Group and Andrew Parker; (4) Mexico's legal system provides a method by which the parties may gather relevant evidence, compel witnesses to appear, to introduce documentary evidence, and to recover money damages; (5) there is a court in Monterrey, Mexico in which Vinmar could file its claim; (6) the judges of the Monterrey courts are licensed attorneys, who are appointed to the bench and have years of experience as attorneys; (7)

---

1. Vinmar did not contest the adequacy of Mexico as a forum until its motion for new trial and motion for reconsideration. Appellees assert, "[T]hose post-ruling motions cannot be used to correct deficiencies or to raise

grounds or evidence not presented timely." Because the substance of Vinmar's arguments are without merit, we need not determine whether the arguments were timely raised.

each judge handles approximately 100 civil cases per year; and (8) the average time from filing until disposition is three years.

■ Vinmar asserts that Mexico is not an adequate alternate forum because it will not be treated fairly due to the general corruption of the Mexican judiciary. To support its argument, Vinmar cites a multitude of Internet websites that purportedly detail the corruption. We begin by noting that adequacy or inadequacy of a forum is typically established by expert affidavits, not by Internet websites or other evidence of questionable credibility. *Cf. Bhatnagar v. Surrendra Overseas, Ltd.*, 52 F.3d 1220, 1230 n. 8 (3d Cir.1995) (discounting newspaper article as evidence of foreign forum's inadequacy); *see also Perforaciones Maritimas Mexicanas S.A. de C.V. v. Seacor*, 443 F.Supp.2d 825, 832 (S.D.Tex.2006) (discussing lack trustworthiness of Internet articles). A review of the case law shows that a forum-is-too-corrupt-to-be-adequate argument based on anecdotal evidence and allegations has been roundly rejected by the overwhelming majority of courts considering it. *See, e.g., Stroitelstvo Bulgaria Ltd. v. Bulgarian–American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir.2009) (stating that plaintiffs' "generalized, anecdotal complaints of corruption are not enough for a federal court to declare that an EU nation's legal system is so corrupt that it can't serve as an adequate forum"); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir.2006) (concluding that plaintiffs "anecdotal evidence of corruption and delay" in the Philippine courts insufficient to show inadequacy); *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir.2002) (refusing "to pass value judgments on the adequacy of justice and the integrity of Ukraine's judicial sys-

tem on the basis of no more than ... bare denunciations and sweeping generalizations"); *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir.2001) (requiring plaintiff to substantiate allegations of serious corruption or delay with "significant evidence documenting the partiality or delay ... typically associated with the adjudication of similar claims"); *Torres v. S. Peru Copper Corp.*, 965 F.Supp. 899, 903 (S.D.Tex.1996) (determining that Peruvian judicial system was not so corrupt as to render Peru an inadequate forum); *but see Bhatnagar*, 52 F.3d at 1226–27, 1235 (affirming district court's determination that India was inadequate forum and noting reliance on two expert affidavits stating that the Indian legal system was in "virtual collapse" and suffered delays of 15–20 years on average). Moreover, we note that courts, including the Supreme Court of Texas, have determined Mexico to be an adequate forum. *See, e.g., In re Pirelli Tire*, 247 S.W.3d at 678; *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th Cir.2009); *In re Ford Motor Co.*, 580 F.3d 308 (5th Cir.2009); *DTEX*, 508 F.3d at 797; *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir.2003); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 382 (5th Cir.2002); *Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F.Supp.2d 251, 261 (W.D.N.Y. 2009).

Vinmar also contends that it has already been the victim of corruption by the Mexican court system related to this controversy. According to Vinmar, it obtained a judgment against Tracomsa in the trial court in Monterrey, Mexico. It states that that the judgment was then reversed on appeal. Based on the procedure on which the judgment was reversed, Vinmar asserts that the Mexican legal system is corrupt. Other than Vinmar's assertions in its motion for new trial, the appellate record contains no evidence to support this

assertion. In addition, it would be inappropriate for us to sit in judgment of another country's appellate process, particularly when based purely on argument and anecdotal assertions.

Vinmar further claims that Noe Chavez, Tracomsa's principal, and others associated with appellees, have engaged in corrupt practices involving Mexican governmental officials. However, there is no evidence in the record to support such assertions; they also are anecdotal and speculative.

We conclude that the trial court did not abuse its discretion when it implicitly determined that Mexico is an adequate alternative forum for Vinmar to pursue its claims against appellees.

### 2. Private Interest Factors

On appeal, Vinmar asserts that the trial court abused its discretion in dismissing its claims based on forum non conveniens because appellees failed to meet their burden to show that the private interest factors weighed in favor of a Mexican forum. The factors pertaining to the private interests of the litigants include the following: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive. *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843; *Quixtar*, 315 S.W.3d at 33. Regarding the adequacy of proof, a forum non conveniens movant must provide enough information to enable the trial court to balance the parties' interests. *See Piper Aircraft*, 454 U.S. at 258–59, 102 S.Ct. at 267 (holding that affidavits describing evidentiary problems defendants would face if trial held in United States were sufficient). By the same token, the evidence need not be overly detailed. *See id.* (explaining that

it is not necessary for defendants to "submit affidavits identifying witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum"); *Quixtar*, 315 S.W.3d at 34 (explaining that defendant need not provide a detailed quantification of costs).

The *Quixtar* court further emphasized that the United States Supreme Court purposefully refused to "lay down a rigid rule to govern discretion" in these cases because "[e]ach case turns on its facts." *Id.* at 34 (quoting *Piper Aircraft*, 454 U.S. at 249, 102 S.Ct. at 263). If "central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the flexibility that makes it so valuable." *Id.* (quoting *Piper Aircraft*, 454 U.S. at 249–50, 102 S.Ct. at 263). It acknowledged that the various factors weighed by the trial court "may be difficult to quantify." *See id.*

We do not reweigh the *Gulf Oil* factors here; that is the job of the trial court. *See id.* Instead, we view the evidence in the record to determine whether the trial court acted within its sound discretion in weighing the factors and determining that the balance favored dismissal. *See id.*

In conducting our review, it is useful to keep in mind the claims at issue. As mentioned, Vinmar sued appellees for breach of contract, fraud, and conspiracy. Vinmar contends that appellees breached the Seller's Certificates by refunding Tracomsa the excess funds transferred by Vinmar to appellees for the equipment purchases. Vinmar also contends that appellees and Tracomsa conspired to swindle Vinmar by misrepresenting and inflating the quantity of equipment that Tracomsa would purchase from appellees for the pur-

pose of obtaining excess funds from Vinmar.

With respect to the private interest factors, appellees evidence showed that much of the pertinent documentary evidence and witnesses are located in Mexico. Specifically all employees and representatives of the three alleged co-conspirators—Utility, Kenworth, and Tracomsa—are located in Mexico. These are the witnesses with first-hand knowledge of whether a conspiracy existed to misrepresent the equipment purchases to Vinmar. The appellees' representatives will also testify regarding the content of the Seller's Certificates, which is in dispute. Similarly, all records of appellees and Tracomsa are located in Mexico. Appellees forum non conveniens evidence also shows that representatives of Mexican administrative agencies and documents from those agencies may be necessary for trial.

In its brief, Vinmar contends that "there is no indication that there will be any greater ease of access to sources of proof in Mexico." Contrary to this assertion, appellees' evidence identifies non-party witnesses and evidence that are in Mexico. Being non-parties to the litigation, such witnesses may be unwilling or resistant to participate in the process. Of particular significance is the fact that appellees' alleged co-conspirator, Tracomsa, is a Mexican company located in Mexico. Ease of access to Tracomsa representatives and documents, as identified in appellees' evidence, will be much greater in Mexico. The same is true of the evidence identified by appellees in the possession of Mexican administrative agencies.

Appellees also offered the declaration of Mexican attorney, Jose Arturo Gonzalez Elizondo. In the declaration, Elizondo describes the process by which litigants in Mexico may obtain the testimony of witnesses living in another county for use in a Mexican legal proceeding. Specifically, Elizondo stated,

> Mexico's legal system contemplates in its procedural law; *Codigo Federalde Procedimientos Civiles*, the procedure of how a party in litigation can obtain the testimony of a witness living in a foreign country. The procedure establishes the following: The party must apply to the court in Mexico and identify the full name and address of the witness, accompany the application with the questions that conform [sic] the testimony; these questions must be submitted to the opposing party in order to give them the right to make counter questions. After this procedure at the court in Mexico is completed, the notification and process of obtaining the testimony will be according the HAGUE TAKING OF EVIDENCE CONVENTION, through letters of request establishing the purpose of this procedure and soliciting the assistance of the competent tribunal in the foreign country in order to obtain the testimony and remit that testimony to the Mexican tribunals for its official translation.

Thus, appellees' evidence showed that the testimony of Jessica Linares and Andrew Parker, who each are identified as a potential witness, can be obtained for use in a Mexican forum. Elizondo's declaration shows that such testimony can be obtained without the necessity of either witness traveling to Mexico.

Appellees did not specifically quantify the expense of litigation in either forum. However, because the majority of the pertinent evidence and witnesses are in Mexico, it follows that the expense of litigating in Texas will be greater than it would be to litigate in Mexico. *See id.* at 34 (citing *In re Volkswagen*, 545 F.3d 304, 317 (5th Cir. 2008) (dismissing need to quantify travel expenses because of the "obvious conclu-

sion" that travel distance from home means time away from work, food, lodging expenses, and similar costs)). Moreover, the record shows that many of the aforementioned documents are in Spanish, underlying communications in this case were in Spanish, and the representatives of the three alleged co-conspirators are Spanish-speaking. Thus, it also logically follows that litigating the case in Texas would necessitate the expense of translation.

Based on the record, we conclude that the trial court did not abuse its discretion in implicitly determining that appellees presented sufficient evidence to tip the balance of the private interest factors in favor of dismissal.

### 3. Public Interest Factors

█ Vinmar also asserts that the trial court abused its discretion in dismissing its claims based on forum non conveniens because appellees failed to meet their burden to show that the public interest factors weighed in favor of a Mexican forum. The relevant public interest factors are as follows: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *See Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843; *Quixtar,* 315 S.W.3d at 33–34.

█ Vinmar relies heavily on its status as a Texas resident to argue that appellees did not meet its burden to show that its claims should be dismissed based on forum non conveniens. Ordinarily, a defendant seeking forum non conveniens dismissal bears a heavy burden in opposing the plaintiff's chosen forum when the plaintiff is a resident of the forum. *See Quixtar,* 315 S.W.3d at 31; *see also In re Pirelli Tire,* 247 S.W.3d at 675 (explaining that forum non conveniens doctrine generally affords substantially less deference to a non-resident's forum choice). As discussed, the Fifth Circuit, and other federal circuits, have taken the position that the forum choice of a resident plaintiff is given less deference when, as in this case, the plaintiff is corporation that has chosen to conduct extensive business in foreign countries and then is injured or defrauded in the foreign venue as a result of those business transactions. *See DTEX,* 508 F.3d at 795. We agree with the logic and reasoning underlying this view.

█ Here, the record shows that Vinmar is a Cayman Islands corporation headquartered in Houston, Texas. It has offices and subsidiaries in 20 countries, including an agent in Monterrey, Mexico. Vinmar is part of Vinmar Group, which has over $1 billion in annual revenues. Its corporate webpage, which was offered as evidence by appellees, states that Vinmar has "been successfully providing international trade, finance, and logistics in emerging markets for more than a quarter of a century." The webpage also states that Vinmar "can offer financing solutions for suppliers and buyers in many countries throughout the world," which is exactly what it did in this case.

The record shows that Vinmar undertook to finance the purchase of equipment by a Mexican buyer from two Mexican sellers. The equipment was made in Mexico, was to be delivered in Mexico, and was to be used in Mexico. The Credit Agreement and Promissory Note were signed in Mexico and are governed by Mexican law. The two Seller's Certificates signed by appellees were executed in Mexico. All communications, including any alleged misrep-

resentations, from appellees or Tracomsa sent to Vinmar originated in Mexico. The only face-to-face meeting that occurred between the parties occurred in Mexico. The alleged conspiracy between appellees and Tracomsa occurred in Mexico.

With respect to contact with Texas, the record shows that Vinmar alleges that it transferred the money from its Texas bank account to Kenworth's bank account in Laredo and to Utility's bank account in California. Appellees later transferred some of the funds to Tracomsa's bank account in Laredo. The record also shows that communications by appellees to Vinmar were directed to Vinmar's Houston office. The record shows that San Antonio Trade Group is also a Texas resident; however, the extent of its or its principal's involvement in this controversy is unclear from the record.

Although Texas does have an interest in providing a forum in which a Texas resident can bring its claims, and in regulating the transfer of funds within its borders, this interest is minimal when compared with Mexico's interest in regulating Mexican companies conducting business and allegedly perpetrating fraud within its boundaries. As described, this dispute involves (1) representations and business negotiations originating and occurring in Mexico, (2) several contracts, including the Seller's Certificates, executed in Mexico, and (3) appellees' and Tracomsa's alleged conduct in Mexico constituting a conspiracy to defraud Vinmar. Although Vinmar asserts that the fraud was directed at it in Texas, the fraud occurred in the context of Vinmar's Mexican business transactions with Mexican companies. Therefore, though this dispute involves a Texas resident, and involves the transfer of funds in Texas, it is more properly characterized as a Mexican controversy.

In its brief, Vinmar asserts that although alleged, appellees have failed to show that Mexican law will govern Vinmar's claims against them. Vinmar contends that this militates against a determination that the balance of public interest factors weighs in favor of dismissal. We note that federal courts have taken the position that "[e]ven the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds." See Warter v. Boston Securities, S.A., 380 F.Supp.2d 1299, 1315 (S.D.Fla.2004) (citing Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 (11th Cir.1985) (indicating that the need to "untangle problems in conflict of laws" weighs in favor of dismissal) and Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co., 896 F.Supp. 1197, 1204 (M.D.Fla.1995) (concluding that "the possibility that foreign law will apply weighs strongly in favor of dismissal")). We also note that the Texas Supreme Court in Quixtar appeared critical of the intermediate appellate court's emphasis on the defendant's failure to demonstrate any choice of law issues as a reason to overrule the trial court's dismissal based on forum non conveniens. See Quixtar, 315 S.W.3d at 35. We are also mindful that the Gulf Oil factors provide for a flexible inquiry, with no one factor being dispositive. Piper Aircraft, 454 U.S. at 249–50, 102 S.Ct. at 263.

In addition, the last factor, the burden of jury duty, favors dismissal in this case. While it is headquartered in Texas, Vinmar is an international company purposefully seeking to conduct business in foreign markets. Although they have an interest, Texas jurors do not have a strong interest in resolving a dispute arising from Mexican business transactions, contracts executed in Mexico, and alleged torts emanating from Mexico directed toward a multinational corporation

that thrives on conducting business in emerging international markets. Significantly, this controversy arose in Mexico and primarily involves Mexican residents. See Gulf Oil, 330 U.S. at 508–09, 67 S.Ct. at 843 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation.").

Based on the record, we conclude that the trial court did not abuse its discretion in implicitly determining that appellees presented sufficient evidence to tip the balance of the public interest factors in favor of dismissal. We further hold that the trial court did not abuse its discretion when it dismissed Vinmar's claims against Utility and Kenworth based on the common law doctrine of forum non conveniens.

We overrule Vinmar's third issue. Because this issue is dispositive of the appeal, we do not reach Vinmar's other issues.

### Conclusion

We affirm the judgment of the trial court.

Justice SHARP, concurring in judgment only.