**Affirmed and Opinion Filed April 30, 2020**



**In the**

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00402-CV**

**CELANESE CORPORATION AND GRUPO CELANESE, S. DE RL DE CV,**
**Appellants**
**V.**
**JAVIER SALCEDO SAHAGUN AND RAMOS & HERMOSILLO**
**ABOGADOS, S.C., Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-09284**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Carlyle

Appellants Celanese Corporation (Celanese) and Grupo Celanese, S. de RL de CV (GC) appeal the trial court's order dismissing their defamation and business disparagement claims against a Mexican citizen and a Mexico-based law firm based on forum non conveniens. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.7.

## Background

Celanese is a Delaware corporation headquartered in Irving, Texas. GC is a wholly-owned subsidiary of Celanese that has operated a manufacturing plant in Poncitlan, Jalisco, Mexico since 1947. Appellants filed this lawsuit against appellees in 2015.

According to the petition,[1] in 1995, Javier Salcedo Sahagun (Salcedo), a Mexican citizen, purchased fifty acres of undeveloped real property adjacent to the Poncitlan plant. Salcedo's purported objective was to eventually sell the property to Celanese at a higher price. Appellants alleged that starting in 2006, Salcedo directed the Mexico-based law firm of Ramos & Hermosillo Abogados, S.C. (R&H) to initiate multiple lawsuits and administrative actions in Mexico designed to shut down or interrupt the plant's business. Additionally, in 2013, Salcedo directed R&H to arrange a meeting with Celanese at Celanese's Irving headquarters. At that meeting, R&H attorneys allegedly told Celanese that Salcedo would continue interfering with Celanese's Mexico operations if it did not purchase Salcedo's property for the price he demanded. Celanese refused.

Celanese claimed Salcedo then began an attack aimed at destroying its reputation. To this end, Salcedo purportedly complained to the Mexican government

---

[1] We also borrow from the undisputed facts set out in this court's 2017 opinion reversing the trial court's grant of special appearances by appellees. *See Celanese Corp. v. Sahagun*, No. 05-16-00868-CV, 2017 WL 3405186, at *12 (Tex. App.—Dallas Aug. 9, 2017, pet. denied) (mem. op.).

that the plant was operating without required permits and polluting the water and soil on his property and in the surrounding area, which Celanese maintained was false. Salcedo notes that this is an appropriate procedure under Mexican administrative law. In mid-April 2015, Salcedo and R&H hired a Washington, D.C. public relations firm, Independent Review, to draft a press release for circulation throughout the U.S., including specific Texas markets, concerning a "raid" on the plant by the Mexican government that had yet to occur.

A few weeks later, Mexican officials raided the plant. The press release issued by Independent Review stated the officials found that the plant had leaked mercury into a nearby river and the surrounding soil was contaminated with mercury and other harmful chemicals. According to appellants, R&H and another Mexico-based law firm retained by Salcedo "were identified as the sole source" of the information in the press release. Celanese conducted its own testing, which it claims did not show contamination. The media outlets that republished the press release's content included more than twenty-five Mexican news outlets, more than a dozen Texas publications and websites, over a hundred local and business-focused news affiliates from across the United States, and several news organizations around the world.

Appellants' petition asserted claims against Salcedo and R&H for defamation per se, business disparagement, and conspiracy to defame. Appellees filed a special appearance, which the trial court granted and this court reversed and remanded. *See*

*Celanese Corp. v. Sahagun*, No. 05-16-00868-CV, 2017 WL 3405186, at \*12 (Tex. App.—Dallas Aug. 9, 2017, pet. denied) (mem. op.).[2]

On remand, appellees filed a motion to dismiss based on forum non conveniens, asserting "the case itself has no significant connection to the forum." (quoting *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 675–76 (Tex. 2007) (plurality op.)). Appellees contended this lawsuit arises from alleged conduct and events that occurred in Mexico relating to real property in Mexico, all evidence necessary to resolve this lawsuit is in Mexico, there is an alternate forum (Mexico) to litigate these issues, and relevant private and public factors favor dismissal. The motion's attachments included an affidavit of Salcedo, a declaration by R&H partner Jose

---

[2] In that prior appeal, this court addressed only the issue of specific personal jurisdiction, which requires, among other things, that nonresident defendants' contacts with the forum demonstrate "relatedness." *Id*. at \*3. For purposes of specific jurisdiction, "[t]he analysis of whether a cause of action relates to the defendant's forum activities . . . requires a 'substantial connection' between the defendant's contacts and the operative facts of the litigation." *Id*. at \*10. "The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction." *Id*. In addressing the "relatedness" requirement, this court stated in part, "[A]ppellees argue that the alleged pollution and non-compliance with Mexican environmental standards are the operative facts of the case. We disagree, because it is the publishing of defamatory statements in the forum that matters, not where the events underlying the story occurred." *Id.* This court concluded that "[a]lthough facts about what happened in Mexico will be relevant to the case, the case arises from, and thus relates to, allegedly defamatory statements published in Texas," and thus "there is a substantial connection between [Salcedo's and R&H's] contacts with Texas and the litigation." *Id*. at \*10–11.

This court further concluded appellees "failed to demonstrate that this is one of those rare cases where minimum contacts exist, but the exercise of jurisdiction would offend traditional notions of fair play and substantial justice." *Id*. at \*12. Specifically, this court stated (1) "nothing in the record demonstrates that litigation in a Texas court would be excessively burdensome or inconvenient for Salcedo or [R&H]"; (2) "Texas has a significant interest in litigating the dispute" because "the underlying claims are Texas causes of action based upon Texas law, and involve the publication of allegedly defamatory statements to Texas citizens concerning the business ethics of a Texas resident"; and (3) "even if some application of Mexican environmental standards is required, nothing precludes a Texas court from doing so or demonstrates that it is ill-equipped for the task." *Id*.

Ramos Castillo (Ramos), appellants' requests for production, excerpts from Celanese's website, and a copy of the press release.

In their response to the forum-non-conveniens dismissal motion, appellants relied heavily on our personal jurisdiction opinion and the deference they argue a plaintiff's choice of forum deserves. They conceded "that Mexico is an available alternative forum for the claims in this lawsuit," but argued that "this case's substantial focus on Texas, the location of multiple witnesses relevant to Defendants' smear campaign in Texas, and Texas's strong interest in this litigation weigh heavily in favor of maintaining this action in Texas." The response's attachments included depositions of Salcedo, Ramos, and Independent Review publicist Velma Ruth; affidavits of several Celanese employees; and related documents and electronic correspondence.

After a hearing, the trial court signed an order dismissing appellants' claims "with prejudice as to refiling same in the United States of America in favor of Mexico as the most convenient forum to resolve this Mexico-related dispute."

**The trial court's forum-non-conveniens dismissal was not improper**

In their sole issue, appellants contend the trial court "erred in dismissing all of Appellants' claims based upon the doctrine of forum non conveniens even though this Court had already concluded that Texas has a substantial relationship to this case and is a convenient forum."

We must initially note our disagreement that our prior personal jurisdiction opinion had preclusive effect on the trial court's forum-non-conveniens analysis or that we are bound here by statements supporting our conclusion as to personal jurisdiction. Despite "touch[ing] on" similar fundamental issues, "forum-non-conveniens questions differ from due-process inquiries" associated with personal jurisdiction. *Pirelli,* 247 S.W.3d at 676. Notably, we conducted our review on personal jurisdiction de novo, enabling us to mechanically reweigh the evidence, something we are forbidden from doing in our abuse-of-discretion review today. *Compare Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (personal jurisdiction is a question of law reviewed de novo), *with Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31, 35 (Tex. 2010) (forum-non-conveniens rulings are reviewed for abuse of discretion).

Also, the forum non conveniens doctrine will always arise "when there are sufficient contacts between the defendant and the forum state to confer personal jurisdiction upon the trial court, but the case itself has no significant connection to the forum." *Pirelli,* 247 S.W.3d at 675–76. Any consideration of "inconvenience" in our prior opinion was in the context of our de novo review addressing due-process-clause personal jurisdiction requirements as to the defendants. *See id.*; *In re SXP Analytics, LLC*, No. 14-11-01039-CV, 2012 WL 1357696, at *2 (Tex. App.—Houston [14th Dist.] Apr. 13, 2012, orig. proceeding) (mem. op.) (these are "distinct inquiries").

A forum-non-conveniens determination "is committed to the sound discretion of the trial court." *Quixtar*, 315 S.W.3d at 31. "It may be reversed only when there has been a clear abuse of discretion; where the court has considered all the relevant public and private interest factors, and where its balancing of these factors is reasonable, its discretion deserves substantial deference." *Id.* "[T]he mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

The doctrine of forum non conveniens allows a court to exercise equitable powers to avoid "imposition of an inconvenient jurisdiction on a litigant" when the court determines the convenience of litigants and witnesses and the interests of justice warrant litigating the matter in another forum. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 710 (Tex. App.—Dallas 2010, no pet.). "[W]hile forum-non-conveniens questions differ from due-process inquiries, the doctrine touches on similar issues of fundamental fairness, protecting defendants from being forced to litigate in oppressive and vexatious circumstances." *Pirelli*, 247 S.W.3d at 676 (internal citation omitted); *SXP Analytics*, 2012 WL 1357696, at *2.

In considering forum non conveniens in an international context, the trial court must first determine whether an adequate alternative forum exists. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254–55 n.22 (1981). Appellants conceded

below and before this court that Mexico is an available alternative forum. We agree. *See Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 675 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing opinions from various courts, including our supreme court, that have determined Mexico to be an adequate forum).

Given that, the court next determines which forum is best suited to the litigation. *Piper Aircraft*, 454 U.S. at 255. In this second step, the court must consider whether certain private and public interest factors weigh in favor of dismissal. *Quixtar*, 315 S.W.3d at 33 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). The defendant bears the burden of proof on all elements of the forum-non-conveniens analysis and must establish that the balance of factors strongly favors dismissal. *RSR Corp.*, 309 S.W.3d at 710–11; *see also Quixtar*, 315 S.W.3d at 33 (explaining it is not necessary for movant to prove that each *Gulf Oil* factor strongly favors dismissal).

Private considerations include (1) the "relative ease of access to sources of proof"; (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses"; (3) the "possibility of view of premises, if view would be appropriate to the action"; (4) the "enforceability of a judgment" once obtained; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Quixtar*, 315 S.W.3d at 33 (quoting *Gulf Oil*, 330 U.S. at 508).

Public considerations include (1) "[a]dministrative difficulties . . . for courts when litigation is piled up in congested centers instead of being handled at its origin"; (2) the burden of "jury duty . . . that ought not to be imposed upon the people of a community which has no relation to the litigation"; (3) "local interest in having localized controversies decided at home"; and (4) avoiding conflicts of law issues. *Id*. at 33–34 (quoting *Gulf Oil*, 330 U.S. at 508–09).

Though the doctrine of forum non conveniens affords great deference to the plaintiff's forum choice, "the doctrine also recognizes that the plaintiff's choice must sometimes yield in the public interest, and in the interest of fundamental fairness." *Pirelli*, 247 S.W.3d at 675. Thus, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 255 n.23.

Appellants contend the trial court improperly analyzed and weighed the public and private interest factors and, in essence, ask us to re-evaluate the parties' evidence as to the factors. Appellants argue the challenged order's language shows the trial court "did not make the finding that would justify forum-non-conveniens dismissal: that 'the balance of the factors so strongly favors the defendant that, in the interest of justice, the case should be tried in another forum.'"

Appellants did not request findings of fact and conclusions of law and the record contains none. Thus, we imply that the court found all facts necessary to support the judgment and supported by the evidence. *See RSR Corp.*, 309 S.W.3d at 699. We review implied findings of fact for legal and factual sufficiency and review legal conclusions de novo. *Id*. A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the factual finding. *Id*. We set aside a judgment for factually insufficient evidence only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam).

The trial court implicitly determined the balance of the private and public interest factors relevant to the forum-non-conveniens analysis strongly favors dismissal. *See RSR Corp.*, 309 S.W.3d at 711. Thus, we address whether the evidence supported the trial court's factor-balancing. *See Rasul v. Rasul*, No. 05-17-00612-CV, 2018 WL 6599018, at *5 (Tex. App.—Dallas Dec. 17, 2018, pet denied) (mem. op.). "In conducting our review, it is useful to keep in mind the claims at issue." *Vinmar*, 336 S.W.3d at 676.

Here, Celanese and its Mexican subsidiary, GC, asserted claims for defamation per se, business disparagement, and conspiracy to defame. Appellants Celanese and GC contend that although appellees "attempt to paint this case as being about the facts in Mexico," it "is actually about . . . Appellees' admittedly false statements and the related smear campaign in Texas, and how that campaign

–10–

damaged Celanese and forced it to sustain damages in Texas." Appellees argue that "the principal issue in this case will be the substantial truth or falsity of the statements in the press release." These arguments, supported by the record, demonstrate support for a conclusion that the alleged falsity of the press release regarding GC's operation of the plant in Mexico is both disputed and central to appellants' claims.

Appellants assert that the private interest factors "are either neutral or collectively weigh in favor of Texas." According to appellants, "[t]here are numerous sources of proof located in Texas that are directly relevant to this case," including Celanese employees and consultants who responded to the press release, Celanese documents regarding the raid, Texas media outlets that republished the press release's statements and communicated with Ruth, and a Houston company that tested samples to rebut the press release's allegations. Appellants also contend (1) while appellees claim that testing involving the plant "will likely be imperative" in this litigation, "[d]ocumentation is all that is necessary for this case, which can be presented in a Texas forum"; (2) although appellees argued in the trial court that multiple lawsuits and administrative actions related to the plant have taken place in Mexico rather than Texas, "the preexisting actions in Mexico were between Celanese and the government, not Appellees," and thus "litigating this case in Mexico would have no impact on judicial economy"; and (3) "[a]ppellees did not identify any issue that would prevent enforcement of a Texas judgment in Mexico."

Appellees' evidence included statements and testimony describing (1) relevant sources of proof in Mexico, including the plant and its employees, the Mexican government and documents held by it, records from Mexican administrative agencies, Mexican legal and soil-testing experts, and employees of R&H and Salcedo; (2) the burden and inconvenience of the amount of international travel and translation services that will be required to litigate in Texas; and (3) the difficulty of enforcing a U.S. judgment in Mexico in light of ongoing litigation in Mexican courts involving "Celanese's pollution." Appellees' evidence also included appellants' requests for production asking for communications with the Mexican government and documents regarding environmental assessments pertaining to the plant.

As to the public interest factors, appellants argue (1) although appellees claim this dispute "is a localized controversy in Mexico," it "stems from a concerted effort aimed at pressuring a Texas-based company"; (2) "[a] Texas jury has a clear interest in resolving that dispute"; (3) "[a]ppellees failed to show any significant burden upon the courts of Texas in litigating this action"; and (4) even if aspects of Mexican law may be relevant, Texas courts "are perfectly capable of addressing and applying questions of Mexican law."

Appellees' evidence included Ramos's declaration describing multiple substantive issues concerning environmental matters in Mexico and the required application of Mexican law to those issues and other litigation matters. While Texas

–12–

courts can apply foreign law, "the public interest factors point towards dismissal where the court would be required to untangle problems in conflict of laws, and in law foreign to itself." *See Rasul*, 2018 WL 6599018, at *6 (quoting *Piper Aircraft*, 454 U.S. at 251).

Appellants ask us, in essence, to surgically and mechanically reweigh the public and private factors, a mode of analysis the supreme court says we are to avoid in forum-non-conveniens appeals. *See Quixtar*, 315 S.W.3d at 35. On this record, we conclude the trial court's balancing of the private and public interest factors is supported by the evidence and is reasonable. We conclude the trial court's decision deserves substantial deference. *See id.*

We pause before concluding to address appellants' contention that the trial court's order shows it "failed to give any deference at all to Celanese's choice of forum." We cannot agree. In the forum-non-conveniens motion, response, and hearing arguments below, the parties specifically addressed deference to a plaintiff's forum choice and that principle's applicability in this case. Nothing in the record demonstrates the trial court failed to apply the appropriate law. And in any event, a determination on this point changes only the forum-non-conveniens movant's burden. *See id.* at 31.

In this regard too, appellants ask us to reweigh the trial court's decision. *See id.* at 35. The law on this equitable topic predictably allows trial courts flexibility— even though "a plaintiff's choice of forum is entitled to deference, dismissal should

not be automatically barred when a plaintiff has filed suit in his home forum." *Rasul*, 2018 WL 6599018, at \*6 (citing *Piper Aircraft*, 454 U.S. at 256 n.23). "And when the balance of conveniences suggests that trial in Texas would be unnecessarily burdensome for the defendants or the court, dismissal is proper." *Id.*

In reviewing the trial court's decision, we do not—and are assured the trial court did not—ignore Celanese's Texas citizenship, but focus on the evidence before the trial court and the trial court's application of guiding rules and principles. We cannot fault the trial court to the extent it considered GC's Mexican citizenship; GC's centrality to the case; Celanese's seventy-year history of doing business in Mexico; Celanese's "global network" of business functions, including "head offices"—other than its Irving "head office" headquarters—in The Netherlands, Germany, China, India, and Japan; the location of events and evidence in Mexico; and the potential application of Mexican law. *See Quixtar*, 315 S.W.3d at 31–32 (a defendant's heavy forum-non-conveniens burden "applies with less force" when seeking dismissal as to a nonresident plaintiff's forum choice).

In this case with one U.S. plaintiff and one Mexican plaintiff suing Mexican defendants over an allegedly false press release reprinted and reported on in the U.S., Mexico, and around the world, there were competing considerations on convenience. There was the potential for a different outcome, but there is nothing in the record mandating a different conclusion and that is the crux of our abuse-of-discretion analysis. *See Rasul*, 2018 WL 6599018, at \*6 (concluding forum-non-conveniens

dismissal was not improper in case involving one Texas-resident plaintiff and one non-Texas-resident plaintiff, where evidence supported trial court's balancing of relevant factors).

The trial court did not clearly abuse its discretion by dismissing this litigation based on forum non conveniens. We affirm the trial court's forum-non-conveniens dismissal order.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

190402F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CELANESE CORPORATION AND GRUPO CELANESE, S. DE RL DE CV, Appellants

No. 05-19-00402-CV      V.

JAVIER SALCEDO SAHAGUN AND RAMOS & HERMOSILLO ABOGADOS, S.C., Appellees

On Appeal from the 191st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-15-09284. Opinion delivered by Justice Carlyle. Justices Pedersen, III and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Javier Salcedo Sahagun and Ramos & Hermosillo Abogados, S.C. recover their costs of this appeal from appellants Celanese Corporation and Grupo Celanese, S. de RL de CV.

Judgment entered this 30th day of April, 2020.