**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed July 10, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00256-CV

## IN RE DAVID DAUAJARE-JOHNSON AND GABRIELA MARTINEZ DE DAUAJARE, Relator

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
400th District Court
Fort Bend County, Texas
Trial Court Cause No. 13-DCV-208485**

## MEMORANDUM OPINION

On April 2, 2014, relators David Dauajare-Johnson and Gabriela Martinez de Dauajare filed a petition for writ of mandamus in this Court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relators ask this Court to compel the Honorable Clifford J. Vacek, presiding judge of the 400th District Court of Fort Bend County, to vacate his February 3, 2014 order denying

their motion to dismiss for forum non conveniens.  We conditionally grant the petition.

## I. BACKGROUND

Pablo Rion Y Asociados, S.A. de C.V. (PRA), a Mexican corporation, sued David Dauajare-Johnson and his wife, Gabriela Martinez de Dauajare, dual citizens of Mexico and the United States in Fort Bend County.  David and Gabriela own homes in both Mexico and Montgomery County.[1]

PRA is a private investment-banking firm, which provides financial advisory services to mid and large size private companies.  PRA specializes in mergers and acquisitions, investitures, joint ventures, strategic alliances, private equity raisings, and public debt offerings.

David and his brother Daniel Dauajare, owned 50.88% of TBC de Mexico, S.A. de C.V. (TBC Mexico).  TBC Mexico is the largest private label tire distributor in Mexico.  TBC International, Inc., a Delaware corporation located in Florida, owned the remaining 49.12% of TBC Mexico's outstanding shares.  TBC International is a wholly owned subsidiary of TBC Corporation, which is a 60% owned subsidiary of Sumitomo Corporation of America.

On January 3, 2008, David, as a representative of the majority shareholders of TBC Mexico, and Saul Villa McDowell of PRA signed a commercial brokerage agreement, under which PRA was granted the exclusive right to design and implement a strategy to sell partially or totally the equity or assets of TBC Mexico

---

[1] David and Gabriela formerly owned a home in Fort Bend County at the time PRA's causes of action purportedly arose.

(the January 3, 2008 brokerage agreement).  Under the agreement, PRA was to receive the greater of $350,000 or a success fee based on a percentage of the transaction price.

PRA alleged that, prior to and after entering into the January 8, 2008 brokerage agreement, David represented to PRA that he and Daniel would not enter into direct negotiations to dispose of their interests in TBC Mexico while PRA was working in connection with the agreement.

PRA also alleged that it worked to establish a strategy for the sale of TBC Mexico's equity or assets, which included locating potential purchasers.  In July 2008, PRA presented TBC Mexico, David, and Daniel with three offers.  One of the offers was $76 million for 100% of TBC Mexico by PalmFund and Linzor Capital.  TBC Mexico, David, and Daniel chose the PalmFund/Linzor offer and instructed PRA to negotiate a closing of the deal.  However, in September 2008, due to the global financial crises that temporarily reduced TBC Mexico's sales volume and profitability, PalmFund/Linzor reduced its offer, and negotiations were put on hold.

In early 2010, PRA revived negotiations with PalmFund/Linzor and obtained an offer of $41 million for TBC Mexico.  TBC Mexico, David, and Daniel refused the offer, but on April 16, 2010, David represented that they would accept $55 million.  On May 10, 2010, PalmFund/Linzor offered $55 million to purchase TBC Mexico.  David, Daniel, and TBC Mexico increased the asking price to $60 million, and then terminated the brokerage agreement effective May 29, 2010.

On September 1, 2010, David and Daniel sold half of their shares of TBC Mexico—approximately 24% of TBC Mexico's equity—to TBC International for $13,810,009 and were granted a put option for the other half of their shares, which was worth at least $13,810,000 (the September 1, 2010 option agreement). According to PRA, David and Daniel transferred control of their shares in TBC Mexico to TBC International through a series of steps, which eventually resulted in the dilution of their participation in TBC Mexico and increased TBC International's participation.

On August 9, 2013, PRA sued David and Gabriela, for breach of contract for David's refusal to the consummate the sale with PalmFund/Linzor for $55 million and for selling his TBC Mexico shares to TBC International. PRA also alleged claims for quantum meruit, unjust enrichment, promissory estoppel, and fraud. Relators filed a motion to dismiss for forum non conveniens in favor of Mexico. On February 3, 2014, the trial court held a hearing and stated on the record that it was denying the motion to dismiss for forum non conveniens, and signed an order that day.[2]

---

[2] Relators also filed a motion to transfer venue, original answer, and special exceptions. At the February 23, 2014 hearing, the trial court announced that it was denying the motion to transfer venue. PRA agreed to re-plead, adding more facts regarding the basis of liability against Gabriela, adding specificity regarding which causes of action were pled against which defendant, and adding more specificity regarding the fraud claim.

PRA filed a first amended original petition in which they asserted causes of action against David for breach of the January 3, 2008 agreement, fraud, promissory estoppel, and quantum meruit. PRA asserted a cause of action for unjust enrichment against Gabriela and alleged that "some or all of the $13,810,000 paid to David Dauajare is being held in the United States and is being used and enjoyed by defendant Gabriela Martinez de Dauajare. Due to community property laws, half of the $13,810,000 is owned by Gabriela Dauajare."

4

Relators filed their petition for writ of mandamus, asking that we compel the trial court to vacate its February 3, 2014 order denying their motion to dismiss for forum non conveniens, and grant the same.

## II. WHICH TRANSACTION OR CONTRACT IS AT ISSUE

As an initial matter, the parties dispute which transaction or contract actually forms the basis of PRA's claims. The different positions form the parties' arguments as to the forum non conveniens analysis. Relators contend the contract at issue is the January 3, 2008 agreement that David signed as a representative of the majority of TBC shareholders, and under which PRA would handle the sale of David's and Daniel's shares of TBC Mexico. In its original petition, PRA alleged that David "breached his contract with PRA by, among other things, refusing to consummate the sale with PalmFund/Linzor for $55 million and entering into a transaction for the sale of his shares to TBC International." Therefore, according to relators, this is a dispute between two Mexican companies that occurred in Mexico.

PRA states that its original petition demonstrates that it is not asserting claims against TBC Mexico for refusing to consummate the transaction. Instead, PRA describes this as a dispute between PRA and relators regarding their "backdoor dealings with TBC International, Inc.—a Delaware corporation headquartered in Florida." Therefore, according to PRA, the dispute primarily involves David's negotiations with TBC International regarding the purchase of David's and Daniel's ownership interests in TBC Mexico—the September 10, 2010 agreement.

Contrary to PRA's assertions that its original petition reflects that it is not asserting claims for the failure to consummate the transaction with PalmFund/Linzor, that is exactly what forms the basis of PRA's complaint. PRA's breach of contract claim is clearly based on the January 3, 2008 brokerage agreement—the contract to which PRA is a party and may sue to enforce. *See Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 7 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Generally, in order to enforce a contract, a litigant must be either a party to that contract or an intended third-party beneficiary."). Thus, PRA's complaints about the transfer of David's and Daniel's TBC Mexico shares are really rooted in the purported breach of the January 3, 2008 brokerage agreement.

## III. WHETHER THE TRIAL COURT APPLIED PERSONAL JURISDICTION PRINCIPLES

Relators claim the trial court abused its discretion and acted contrary to law by basing its denial of their forum non conveniens motion on principles of personal jurisdiction. *See SXP Analytics, LLC*, No. 14-11-01039-CV, 2012 WL 1357696 (Tex. App.—Houston [14th Dist.] Apr. 13, 2012, orig. proceeding) (mem. op.) (holding that, to the extent the trial court applied personal jurisdiction analysis instead of forum non conveniens analysis, the trial court abused its discretion). Relators cite to the following statement by the trial court at the February 3, 2014 hearing:

> THE COURT: Well, counsel, y'all both made good arguments, but I think that, with the defendants being residents here, citizens here, that it's just as convenient here as it is in Mexico, and, therefore, I'm going to deny the motion to dismiss for forum non conveniens.

6

Thus, relators assert that the trial court treated the motion to dismiss as a special appearance challenging personal jurisdiction, even though personal jurisdiction was never contested, but is presumed to exist in the context of forum non conveniens.

However, the hearing record reflects that counsel for both relators and PRA argued about whether Mexico was a more convenient forum in accordance with the forum non conveniens analysis. Moreover, the record does not clearly reflect that the trial court based its ruling on personal jurisdiction principles. Even if the trial court based its ruling on personal jurisdiction principles, the trial court, as addressed below, abused its discretion by denying relators' motion to dismiss based on erroneous application of the forum non conveniens analysis.

## IV. STANDARD OF REVIEW FOR FORUM NON CONVENIENS

An order denying a motion to dismiss for forum non conveniens is reviewable on mandamus. *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 679 (Tex. 2007) (orig. proceeding). We review a trial court's refusal to dismiss on forum non conveniens grounds for an abuse of discretion. *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 923 (Tex. 2010) (orig. proceeding) (per curiam). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). An adequate remedy by appeal does not exist if the trial court erroneously denies a motion to dismiss for forum non conveniens. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008) (orig. proceeding).

Forum non conveniens is an equitable doctrine exercised by courts to prevent the imposition of an inconvenient forum on a litigant. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n.2 (Tex. 1994). A trial court will exercise the doctrine of forum non conveniens when it determines that, for the convenience of the parties and witnesses and in the interest of justice, the action should be instituted in another forum. *Id.*

A defendant seeking dismissal based on forum non conveniens "'ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.'" *Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (per curiam) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). However, a nonresident plaintiff's (such as PRA's) choice of forum is afforded substantially less deference under the forum non conveniens doctrine. *Id.* at 31−32.

## IV. FORUM NON CONVENIENS ANALYSIS
## A. Whether Mexico is an Alternative Forum

In the forum non conveniens analysis, the court must first determine that an alternative forum exists. *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 674 (Tex. App.—Houston [1st Dist.] 2010, no pet.). An alternative forum exists when it is both available and adequate. *Id.*

### 1. Available Forum

The foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum. *Id.* Relators contend that Mexico is an available forum because (1) PRA is a Mexican corporation, with its principal place of business in Mexico, and is subject to the jurisdiction of Mexican courts; (2)

8

relators are both citizens of Mexico; and (3) the facts alleged by PRA would give rise to claims under Mexican law that would fall within the jurisdiction of a court in Mexico City; and (4) relators have stipulated to jurisdiction in Mexico.

PRA does not dispute that, as a Mexican corporation, with its principal place of business in Mexico, it comes within the jurisdiction of Mexican courts. Instead, PRA asserts that Mexican courts do not have jurisdiction over the dispute or Gabriela. PRA submitted the "declaration" of its Mexican law expert, Jorge Jesus Galicia Romero. Romero testified that Mexican courts generally do not have jurisdiction over individuals not domiciled in Mexico, unless those individuals have agreed to submit themselves to jurisdiction in Mexico. When contracting parties do not expressly select the place of performance of the contract, Mexican courts only have jurisdiction over defendants who are domiciled in Mexico.

Texas courts hold that another forum is available if the defendant submits to the jurisdiction of the other forum. *See, e.g.*, *In re BPZ Resources, Inc.*, 359 S.W.3d 866, 873 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding [mand. denied]) ("We conclude that Peru is an alternate forum in which this action may be tried based upon relators' agreement to submit to personal jurisdiction in Peru."); *Vinson v. Am. Bureau of Shipping*, 318 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding that Singapore was an available forum because evidence showed, among other things, that defendants had conditioned the forum non conveniens dismissal upon their submitting to the jurisdiction of Singapore courts); *Sarieddine v. Moussa*, 820 S.W.2d 837, 842 (Tex. App.—Dallas 1991, writ denied) (holding that Abu-Dhabi was an available forum because the defendant had submitted to jurisdiction there).

9

David and Gabriela each submitted an affidavit in which they stated that they "are willing to appear in a court in Mexico and litigate this dispute." Because it is undisputed that relators have agreed to submit themselves to the jurisdiction of a Mexican court, Mexico is an available forum. To the extent the trial court decided that Mexico is not an available forum, the trial court abused its discretion.

## 2. Adequate Forum

For Mexico to be an alternative forum, it must also be an adequate forum. "[A]n alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Pirelli Tire, L.L.C.*, 247 S.W.3d at 678 (quoting *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir.2003)) (internal quotations omitted). The substantive law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is unlikely to obtain basic justice there. *Vinmar Trade Fin., Ltd.*, 336 S.W.3d at 674.

Relator's expert, Ignacio Pinto-Leon, testified that causes of action for breach of contract, quantum meruit, unjust enrichment, promissory estoppel, and fraud are "regulated and an adequate remedy is provided for each" under Mexican law. Pinto-Leon stated remedies for each of these causes of action include "material damages and moral damages." Material damages are awarded to make the prevailing plaintiff whole again. Moral damages are awarded to compensate the victim for intangible losses suffered due to the defendant's wrongful misconduct. There is no cap on the amount of moral damages that a party may

recover, but Mexican law does not provide for punitive damages in either contractual or extra-contractual liability cases.

Romero stated in his declaration, that "severe penalties, in the form of mandatory attorney's fees and costs, in an amount up to twenty percent of the amount in controversy, could potentially be imposed on a plaintiff who improperly files a lawsuit in Mexico." Romero quoted Articles 135 and 140 of the Civil Procedure Code for the State of San Lius Potosi in his declaration.[3] Those provisions merely provide that the losing party pays the attorney's fees of the prevailing party in the litigation. As Romero explained in his declaration, Mexican courts have jurisdiction over individuals who are not domiciled in Mexico if such individuals have agreed to submit to the Mexican courts. Both David and Gabriela

---

[3] Article 135 provides:

*Article 135.* Attorneys fees and costs shall always be awarded, whether the parties request them or not:

I. Against the litigator who does not obtain a favorable resolution, whether in the main case or incidental cases which may arise;

II. Against that who fails to obtain a favorable result in appeal. In this case the award shall encompass the fees and costs for the lower and appellate procedures . . . ."

Article 140 provides

*Article 140.* Under no circumstances, regardless of the works performed and expenses incurred in a case, may the attorneys fees and costs shall exceed twenty percent of the amount in dispute; if the matter in dispute is not a given amount, the judge shall, as a matter of Law, reduce the amount to the referred twenty percent calculation by having the amount or value of the case appraised by experts.

have agreed to submit to the jurisdiction of the Mexican courts. Thus, such potential "penalties" do not render Mexico an inadequate forum.

In his declaration, Romero further explained that "Mexico made express reservations in connection with Article 23 of the Hague Convention so that they would be consistent with its Procedural Rules which do not allow for US style pretrial proceedings."[4] Romero stated that PRA requires the pretrial depositions of

---

[4] Article 23 states: "A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries." Article 23 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T., T.IA.S. No. 7444. Romero quoted the following provision in his declaration: Romero quoted the following provision in his declaration:

Preparation of pretrial proceedings

\* \* \*

In connection with article 23 of the Convention, Mexico declares that, under its law, only letters rogatory asking for the submission and transcript of documents can be served when and if the following requirements are met:

(1) The procedure has already started (consequently, it prohibits the pretrial), and

(2) The documents have been reasonably identified as to date, contents, and other relevant information; they specify those events or circumstances that reasonably allow the requiring party that the documents so requested are known to the person from whom they are requested, or that they are or were in the hands or under control or safeguard of such person.

The direct relation between the evidence or the information being requested and the pending procedure should be identified.

Relators disagree with Romero and argue that the Article 23 opt-out provision precludes the ability of a party in another country's court from taking a deposition of a witness in Mexico for use in proceedings in another country because Mexico does not recognize pretrial discovery under its civil rules, but a party can obtain discovery in the U.S. for use in a Mexican proceeding. Therefore, according to relators, the exception would actually preclude them from taking the

three TBC International executives—Lawrence Day, Timothy Miller, and Terry Trantina—who reside in the United States, and PRA's case will be severely compromised without those pretrial depositions. The fact that Mexico does not provide for "U.S.-style" pretrial discovery does not render Mexico an inadequate forum. *See Pirelli Tire, L.L.C.*, 247 S.W.3d at 678 (holding that Mexico was an adequate forum, even assuming that it did not provide for "American-style" discovery, in addition to not providing a cause of action for strict liability or survival damages, and severely restricted damages for death). Moreover, PRA does not contradict relators' evidence that Mexico provides adequate remedies for PRA's causes of action. *See id.*

Whether Mexico is an adequate forum is a legal question. To the extent that the trial court held that Mexico was not adequate forum, it failed to analyze the law correctly and abused its discretion. Therefore, we conclude that relators have shown that Mexico is an alternative forum.

## B. *Gulf Oil* Private Interest Factors

If there is an alternative forum, the court then considers the private and public interest factors set forth in *Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 508–09 (1947). Texas courts apply the *Gulf Oil* factors to the forum non conveniens analysis. *Quixtar, Inc.*, 315 S.W.3d at 33−34; *Pirelli Tire, L.L.C.*, 247 S.W.3d at 676−77. The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the

depositions of key, non-party fact witnesses, who are all residents of Mexico and outside the subpoena power of the trial court.

13

possibility of a view of the premises, if a view would be appropriate to the action; (4) the enforceability of a judgment once obtained; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf Oil Corp.*, 501 U.S. at 508.

Requiring extensive investigation to produce evidence for the dismissal hearing would defeat the purpose of the request for this type of dismissal. *Quixtar, Inc.*, 315 S.W.3d at 34. However, there needs to be enough information to enable the trial court to balance the interests of the parties. *Id.* It not necessary for the movant to prove that each *Gulf Oil* factor strongly favors dismissal. *Id.* at 33. The court of appeals' review does not encompass mechanically re-weighing the *Gulf Oil* factors. *Id.* at 35.

## 1. Relative Ease of Access to Sources of Proof

Addressing the first factor—the relative ease of access to sources of proof—relators assert most of the documents and witnesses relevant to PRA's performance under the January 3, 2008 brokerage agreement, the termination of the agreement, the payments made by TBC Mexico to PRA, and various negotiations with PalmFund/Linzor are located in Mexico. David stated in his affidavit that the documents related to PRA's work under the January 3 brokerage agreement, and the September 1, 2010 transaction between the shareholders of TBC Mexico, to which he would have access as an employee of TBC Mexico, are located at TBC Mexico's corporate headquarters in Mexico. Moreover, hard copies of the documents would be in file cabinets, and electronic documents, including emails, are stored on servers in that office. The majority of those documents are the property of TBC Mexico. Communications regarding the PalmFund/Linzor

14

negotiations were sent from representatives of PalmFund/Linzor located in Mexico or Chile to PRA and TBC Mexico's offices in Mexico. The majority of PRA's communications with David were sent and received in Mexico. Many of the communications, which were transmitted via email are in Spanish and would need to be translated into English to be used in this case.

PRA contends that the relevant documents—those related to the transaction transferring David's and Daniel's share of TBC Mexico to TBC International—are in English and Spanish. Those documents include emails between David and TBC International executives, who do not speak Spanish, and do not need translating if the case stays in Texas.

David testified in his interrogatory responses that he has a laptop; PRA, without citing evidence, asserts that, "presumably," David can access his emails and other relevant documents. Relators state that even if the documents related to the transactions among TBC Mexico shareholders were relevant, those documents have already been provided to PRA through Florida's equivalent of a Rule 202 action.[5] PRA does not dispute that it has already obtained the documents regarding the sale of David's and Daniel's shares to TBC International.

According to the evidence presented by relators, most of the relevant evidence is located in Mexico and is in Spanish. The cost of translating the documents into English would be an extra expense.[6]

---

[5] *See* Tex. R. Civ. P. 202 (providing for presuit depositions).

[6] *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 799 (5th Cir. 2007) ("Most of the documents are in Spanish; obtaining and translating these documents would be burdensome, time-consuming, and costly in this forum."); *Benz Grp. v. Barreto*, 404 S.W.3d 92, 98 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (observing that "many of the relevant documents are

However, the relative ease of the access to sources of proof is a fact question, and the trial court could have found that this factor did not favor dismissal. We are prohibited from re-weighing this factor. *See Quixtar, Inc.*, 315 S.W.3d at 35. Therefore, we cannot conclude that the trial court abused its discretion if it found that the first private interest factor does not favor dismissal.

**2. The Availability of Compulsory Process for Attendance of Unwilling Witnesses, and the Cost of Obtaining Attendance of Willing Witnesses**

As to the second factor—the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses—relators contend that there are non-party witnesses they want to call at trial, but who are in Mexico and outside the trial court's subpoena power. *See ENSCO Offshore Int'l, Co.*, 311 S.W.3d at 926 (noting lack of compulsory process in Texas (citing Tex. R. Civ. P. 176.3)). David stated in his affidavit that all of the PRA representatives, with whom he had communications related to the January 3, 2008 brokerage agreement, are residents of Mexico. Pablo Rion and Saul Villa McDowell, both of PRA, are residents of Mexico. Cipriano Santisteban, the individual at PalmFund/Linzor with whom David had most of his communications regarding the offer to purchase TBC Mexico, also resides in Mexico. Daniel, who is a shareholder and officer of TBC Mexico, resides in Mexico, and has knowledge of the negotiations related to the brokerage agreement, its performance, the

---

written in Portuguese, and litigation in Texas would require the additional expense of their translation in English"); *Vinmar Trade Fin., Ltd.*, 336 S.W.3d at 678 ("[T]he record shows that many of the aforementioned documents are in Spanish, underlying communications in this case were in Spanish, and the representatives of the three alleged co-conspirators are Spanish-speaking. Thus, it also logically follows that litigating the case in Texas would necessitate the expense of translation.").

negotiations with PalmFund/Linzor, and the September 1, 2010 transaction among the TBC Mexico shareholders. Finally, David testified that none of the people who represented TBC International in the transaction among the existing TBC Mexico shareholders are located in Texas.

With respect to the appearance of witnesses at trial, PRA contends that the three TBC International executives are in Florida, and their depositions could not be obtained for use in a trial in Mexico because Mexico has chosen to exempt itself from the Hague Convention allowing for pretrial discovery. But if the trial were held in Texas, PRA could obtain the depositions of the Florida witnesses in Florida with a letters rogatory.

PRA further asserts that relators have not shown that Daniel, who is a U.S. resident and owns property in the U.S., will not appear voluntarily at a trial in Texas. As to Cipriano Santisteban, PRA produced an agreement for him to appear in Texas.[7] As to Saul Villa McDowell, PRA's counsel stated in an affidavit that "PRA agrees to pay for either: (1) defendant's counsel (1 lawyer) to fly to Mexico to depose Mr. McDowell; or (2) the flight and expense incurred in connection with Mr. McDowell appearing in Texas to provide testimony in this matter."

---

[7] The agreement signed by Cipriano Santisteban states:

> Upon plaintiff['s] or defendants' request, I agree to voluntarily appear in Texas, at a mutually convenient time and place, to provide sworn testimony in the litigation styled *Pablo Rion y Asociados, S.A. de C.V. v. David Dauajare and Gabriela Martinez de Dauajare*, pending in the 400th Judicial District Court of Fort Bend County, Texas.
>
> A request for my appearance may be communicated through plaintiff's counsel, Daniel W. Jackson.

The witnesses who live in Florida are no more within the subpoena power of the trial court in Texas than are the witnesses in Mexico.[8] *See* Tex. R. Civ. P. 176.3. PRA has failed to explain what relevant testimony the TBC International executives would provide in the underlying case. PRA does not explain by what procedure Cipriano Santisteban's agreement to appear and testify in Texas litigation is enforceable, particularly when the Texas trial court does not have subpoena power over Santisteban. Nor does PRA show how its agreement to pay the expense of bringing Saul McDowell to Texas is enforceable for the same reasons as to Santisteban.

Most of the relevant witnesses are in Mexico, and are not subject to the trial court's subpoena power in Texas. Nor are the three TBC International executives subject to the trial court's subpoena power. Whether witnesses are subject to compulsory process is a question of law, and the trial court abused its discretion to the extent that it concluded the Mexican witnesses or Florida witnesses were subject to compulsory process in Texas. The second private interest factor favors of dismissal.

**3. The Possibility of a View of the Premises, if a View Would be Appropriate to the Action**

As to the third factor—the possibility of a view of the premises, if a view would be appropriate to the action—relators argue that an inspection of TBC Mexico's operations by the parties' experts would be required. According to

---

[8] Relators contend that the Hague Convention allows testimony for use in a Mexican proceeding to be taken from non-party witnesses located in the United States. Relators state that the court of appeals in *Vinmar* sets forth how a party in a Mexican court can obtain the testimony of a witness living in a foreign country. *See* 336 S.W.3d at 677. *Vinmar*, however, quoted the expert opinion of one of the parties, who explained the procedure. *Id.*

relators, because PRA alleges that its efforts to secure a higher offer price from PalmFund/Linzor allowed David and Daniel to enhance the value of TBC Mexico before entering into the restructuring agreement with TBC International, the parties' discovery and evidentiary presentations on the valuation of TBC Mexico are at issue. TBC Mexico only has operations in Mexico, and sending a U.S. expert to Mexico, or bringing a Mexican expert to Texas, would be expensive.

PRA complains that relators did not address the third factor in the trial court, but waited to address it in their petition for writ of mandamus, and requests that this court disregard relators' argument in support of this factor. Relator waived their argument on this factor by not raising it in the trial court. *See In re Advance Payroll Funding, Inc.*, 254 S.W.3d 710, 714 (Tex. App.—Dallas 2008, orig. proceeding) (holding that arguments not presented to the trial court will not be considered in a petition for writ of mandamus).

PRA, however, presented no evidence on this factor. Instead, PRA's counsel argued at the hearing that "There no evidence to potentially review somewhere else, like a land deal, where we'd have to go kick the dirt and look at a building."

With neither party having presented evidence on the third private interest factor, it does not weigh in favor of dismissal of the case or keeping it in Texas.

**4. The Enforceability of a Judgment Once Obtained**

As to the fourth factor—the enforceability of a judgment once obtained—neither relators nor PRA address this factor. Therefore, the fourth private interest factor does not weigh in favor of either dismissal of the case or keeping it in Texas.

19

**5. All Other Practical Problems that Make Trial of a Case, Easy, Expeditious, and Inexpensive**

As to the fifth factor—all other practical problems that make trial of a case easy, expeditious, and inexpensive—PRA, relying on arguments of trial counsel at the hearing, contends that if this case is maintained in Fort Bend County, it would be easy to get depositions out of the three executives in Florida, whereas in Mexico, PRA would not be able to subpoena these primary witnesses. As discussed above, the Florida witnesses are not subject to the Texas trial court's subpoena power. *See* Tex. R. Civ. P. 176.3.

Moreover, most of the relevant evidence is located in Mexico and is in Spanish. The need to translate documents into English will add to the cost, time, and burden of trying the case in Texas. *See DTEX, LLC*, 508 F.3d at 801 (explaining that the fact that most of the documents were in Spanish would have to be translated if the case proceeded in Texas weighed in favor of dismissal in favor of the Mexican forum under the fifth factor); *Benz Grp.*, 404 S.W.3d at 98 (observing in application of private interest factors that translation of documents from Portugese into English would be an additional expense if the case were litigated in Texas). Also, most of the relevant witnesses are located in Mexico, which adds to cost and burden of trying this case in Texas. *See DTEX, LLC*, 508 F.3d at 801 (concluding that the burden of having two American witnesses testify in Mexico was far less than the costs and burdens of having the many Mexican witnesses travel to Texas and weighed in favor of dismissal in favor of the Mexican forum under the fifth factor); *ENSCO Offshore Int'l Co.*, 311 S.W.3d at 926 (observing, in application of the fifth factor, that the cost of airfare from Singapore or Australia to Dallas was five times more expensive than the cost of

airfare between Australia and Singapore, and the travel time between Australia and Singapore was five hours compared to over twenty hours for travel between Australia or Singapore and Dallas). The additional cost and burden of translating Spanish documents into English for trial in Texas and having Mexican witnesses travel to Texas to appear at trial, assuming they would be willing to appear, renders trial in Mexico easier and more expeditious and less expensive.

Whether the witnesses are subject to compulsory process in Texas is a question of law. As addressed above, to the extent that the trial court held that the Mexican and Florida witnesses are subject to the trial court's subpoena power, it abused its discretion. However, whether trial would be easy, expeditious, and inexpensive because evidence is located in Mexico and would have to be translated into English and it would cost more for witnesses located in Mexico to attend trial is a fact issue, and the trial court did not abuse its discretion if it found that this did not favor dismissal. Given this posture, the fifth private interest factor is neutral, neither favoring nor disfavoring dismissal.

## C. *Gulf Oil* Public Interest Factors

We now turn our attention to the public interest factors, which include: (1) administrative difficulties flowing from court congestion; (2) the burden of jury duty imposed on the citizens of the community with no relation to the litigation; (3) local interest in having localized controversies decided at home; and (4) the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law. *Gulf Oil*, 330 U.S. at 508–09. Based on relators' assertion that the fourth factor is the most important, we address it first.

21

## 1. Avoiding Conflicts of Law Issues

Relators assert that the most significant public interest factor in this case is the fourth factor—choice of law.[9] Relators contend the forum non conveniens analysis favors conducting the trial in a court that is familiar with the law that will govern the case. *See Gulf Oil*, 330 U.S. at 509 ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."). Relators, thus, assert that application of the "most significant relationship test" dictates the application of Mexican law to PRA's claims. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6).[10] In *Duncan*, the court adopted the most significant contacts method for

---

[9] We cannot place emphasis on any one factor. *See Quixtar, Inc.*, 315 S.W.3d at 34. "If 'central emphasis were placed on any on factor, the forum non conveniens doctrine would lost much of the flexibility that makes it so valuable.'" *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249−50 (1981)).

[10] Section 6 of Restatement (Second) Conflicts of Law provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

resolving conflicts of law in all cases "'except those contract cases in which the parties have agreed to a valid choice of law clause.'" *Fairmont Supply Co. v. Hooks Indus., Inc.*, 177 S.W.3d 529, 537 n.6 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (quoting *Duncan*, 665 S.W.3d at 421)).

Relators assert that the January 3, 2008 brokerage agreement was written, executed, and performed in Mexico, not in Texas or anywhere else in the U.S. The subject of the contract—TBC Mexico—is a Mexican company that operates exclusively in Mexico. PRA is a Mexican corporation and David is a Mexican citizen.

PRA, on the other hand, contends that Texas law applies because the dispute is between a Mexican company and Texas residents concerning the sale of one of the Texas resident's stock to a Delaware corporation headquartered in Florida, and includes David's negotiations with TBC International concerning the purchase of David's and Daniel's ownership interest in TBC Mexico.

This dispute is based on the breach of the January 3, 2008 brokerage agreement, which was between Mexican parties and performed in Mexico. Applying the section 6 factors, Mexico has an interest in deciding a dispute between its own citizens, particularly where the performance of the subject contact was to be in Mexico. Mexico has an interest in regulating parties doing business in

---

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6.

Mexico. There is better predictability and uniformity in the result if the Mexican courts apply Mexican law.

The application of the section 6 factors favors the application of Mexican law to the underlying case, and a Mexican court is better suited to hear this dispute in which Mexican law applies. One court of appeals has recognized that even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds. *See Vinmar* 336 S.W.3d at 679 (noting that the federal courts have taken the position that the possibility of the application of federal law is sufficient to warrant dismissal on forum non conveniens).

We conclude that Mexican law applies to the underlying dispute. Whether the claims are governed by the laws of Mexico or the laws of Texas is a legal question. Therefore, to the extent the trial court held that Texas law applied to this case after conducting an analysis under the "most significant relationship test," the trial court abused its discretion for failing to analyze the law correctly. Therefore, the fourth public interest factor favors of dismissal.

## 2. Administrative Difficulties

As to the first factor—administrative difficulties flowing from court congestion—PRA's counsel stated at the hearing, without presenting evidence on this factor, that the trial court has done a "wonderful job" of processing cases, that Fort Bend County has a new courthouse, and the electronic filing system is up and running. Similarly, relators offered no evidence on this factor. The public interest in minimizing administrative difficulties weighs in favor of dismissal in favor of a Mexican forum due to the likely application of Mexican law. *See DTEX, LLC*, 508 F.3d at 802 (holding that, although the record contained no information as to

24

relative court congestion, the public interest in minimizing administrative difficulties weighed in favor of dismissal because of the likely application of Mexican law, among other things). Even assuming the trial court concluded there would be no court congestion by keeping this case in Fort Bend, because Mexican law applies as a matter of law, this factor favors dismissal.

**3. The Burden of Jury Duty Imposed on the Citizens of Community with No Relation to the Litigation & Local Interest in Having Localized Controversies Decided at Home**

With regard to the second and third factors, this is essentially a Mexican dispute with no relation to Texas. The citizens of Texas should not have to bear the burden of hearing this dispute involving a Mexican contract to be performed in Mexico by Mexican citizens. *See Pirelli Tire*, 247 S.W.3d at 676 ("[I]t is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection to the State."). "Dismissal based on *forum non conveniens* is appropriate when there are sufficient contacts between the defendant and the forum state to confer personal jurisdiction on the trial court, but the case itself has only insignificant connections to the forum." *SXP Analytics, LLC*, 2012 WL 1357696, at *2. The fact that David and Gabriela are also U.S. citizens residing even a majority of the time in Texas does not bear on the relation of the subject matter of the litigation to Texas. *See ENSCO Offshore Int'l Co.*, 311 S.W.3d at 927 ("[T]he fact that the trial court has jurisdiction over the defendants because their offices are in Dallas is a separate issue from the whether the case should be dismissed on forum non conveniens grounds."). Therefore, Texas does not have sufficient interest in hearing this dispute. To the extent the trial court held that this case has a relationship to Texas—a question of

law—the trial court abused its discretion, and the second and third public interest factors favor of dismissal.

The trial court abused its discretion to the extent that it found the second private interest factor (the availability of compulsory process) and all the public interest factors did not favor dismissal because the trial court failed to analyze the law correctly or apply the law correctly to the facts. It was not necessary for relators to prove that each *Gulf Oil* factor strongly favors dismissal, but there needs to be enough information to enable the court to balance the interests of the parties. *Quixtar, Inc.*, 315 S.W.3d at 33−34. Each case turns on its own facts. *Id.* at 34. Under the specific facts of this case, we conclude that the *Gulf Oil* private and public interest factors favor dismissal in favor of a Mexican forum. Therefore, the trial court abused its discretion in holding otherwise.

## V. CONCLUSION

In sum, we hold that Mexico is an alternative forum because it is both available and adequate and that the trial court abused its discretion by concluding otherwise. We further hold that the trial court abused its discretion in finding that the *Gulf Oil* factors favored keeping the case in Texas. Therefore, we conclude that the trial court abused its discretion by not granting relators' motion to dismiss for forum non conveniens. Moreover, relators do not have an adequate remedy by appeal. *See In re Gen. Elec. Co.*, 271 S.W.3d at 685 (stating an adequate remedy by appeal does not exist when the trial court erroneously denies a motion to dismiss for forum non conveniens).

Accordingly, we conditionally grant relators' petition for writ of mandamus and direct the trial court to vacate its February 3, 2014 order denying relators'

motion to dismiss for forum non conveniens and to dismiss the case on forum non conveniens. The writ issue only if the trial court fails to act in accordance with this opinion.


        /s/     Tracy Christopher
              Justice

Panel consists of Justices Christopher, Jamison, and McCally.